1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10  WAYNE LAWSON,

11            Petitioner,              No. CIV S-04-1869 GEB DAD P

12       vs.

13  JEANNE WOODFORD, et al.,

14            Respondents.            FINDINGS & RECOMMENDATIONS

15  _____/

16            Petitioner is a state prisoner proceeding pro se with an application for a writ of

17  habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner alleges that the decision of the California

18  Board of Parole Hearings (hereinafter "Board") to deny him parole at his second parole

19  consideration hearing held on June 12, 2002 violated his right to due process, the Ex Post Facto

20  Clause, and the prohibition against bills of attainder.  He also alleges that his Fourteenth

21  Amendment rights were violated because the Board disregarded regulations ensuring fair

22  suitability hearings and instead operated under a policy requiring that all of those convicted of

23  murderer in California be found unsuitable for parole.  Upon careful consideration of the record

24  and the applicable law, the undersigned will recommend that petitioner's application for habeas

25  corpus relief be denied.

26  /////

1

1
PROCEDURAL BACKGROUND

2        Petitioner is confined pursuant to a judgment of conviction entered in the

3 Sacramento County Superior Court in 1990.  (Pet. at (2).)  A jury found petitioner guilty of one

4 count of second degree murder in violation of California Penal Code § 187, and it was

5 determined that he used a firearm in the commission of the crime.  (Id.)  On March 16, 1990,

6 petitioner was sentenced to a state prison term of seventeen years to life with the possibility of

7 parole.  (Id.)

8        Petitioner's initial parole consideration hearing, held at Folsom State Prison on

9 June 28, 1999, resulted in a three-year denial of parole.  (Pet., Ex. entitled "1999 Parole Hearing

10 Transcript.")  A subsequent parole consideration hearing was held at Folsom State Prison on June

11 12, 2002.  (Memorandum of Points and Authorities in support of petition (P. & A.), Ex. I ("2002

12 Parole Hearing Transcript").)  On that date, a two-member panel of the Board of Prison Terms

13 found petitioner not suitable for parole and denied parole for two years.  (Id.)  It is that latter

14 decision that is at issue in this case.

15        Petitioner filed an administrative appeal from the June 12, 2002 decision on

16 September 2, 2002.  (P. & A. at 1 & Ex. entitled "Administrative Appeal.")  The record does not

17 reflect whether the Office of Policy and Appeals issued a decision or provided any other response

18 to the appeal.  After waiting 120 days, petitioner sought relief in the state courts.  (P. & A. at 1.)

19 On January 24, 2003, petitioner filed a habeas petition in the Sacramento County Superior Court.

20 (Id. & Ex. entitled "Superior Court Habeas Corpus.")  In an order filed March 25, 2003, the

21 Superior Court denied the petition for failure to exhaust administrative remedies.  (Pet., Ex.

22 entitled "Superior Court Denial.")

23        Petitioner next submitted a habeas petition to the California Court of Appeal for

24 the Third Appellate District.  (P. & A. at 1& Ex. entitled "Appellate Court Habeas Corpus.")

25 The appellate court's order filed May 15, 2003, reads as follows:  "The petition for writ of habeas

26 is denied on the merits."  (Respondents' November 5, 2004 Mot. to Dismiss (Mot. to Dismiss) at

4 & Ex. 5.)  Finally, petitioner submitted a habeas petition dated July 9, 2003, to the California

Supreme Court.  (Pet., Ex. entitled "State Supreme Court Habeas Corpus.")  That petition was

summarily denied by order filed May 19, 2004.  (Pet., Ex. entitled "State Supreme Court

Denial.")

          Petitioner's federal habeas petition was received for filing by this court on

September 8, 2004.

ANALYSIS

I.  <u>Standards of Review Applicable to Habeas Corpus Claims</u>

          A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

some transgression of federal law binding on the state courts.  <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860,

861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v.

Isaac</u>, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

interpretation or application of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991);

<u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085.  Habeas

corpus cannot be utilized to try state issues <u>de novo</u>.  <u>Milton v. Wainwright</u>, 407 U.S. 371, 377

(1972).

          This action is governed by the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA").  <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d

1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall
> not be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of the
> claim -
>
>      (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

/////

3

1               (2) resulted in a decision that was based on an unreasonable
              determination of the facts in light of the evidence presented in the
2               State court proceeding.

3 See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

4 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

5         The court looks to the last reasoned state court decision as the basis for the state

6 court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

7 court reaches a decision on the merits but provides no reasoning to support its conclusion, a

8 federal habeas court independently reviews the record to determine whether habeas corpus relief

9 is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

10 Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

11 reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

12 AEDPA's deferential standard does not apply and a federal habeas court must review the claim

13 de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

14 1167 (9th Cir. 2002).

15 II.  Petitioner's Claims

16         Petitioner raises numerous arguments challenging the Board's June 12, 2002,

17 decision finding him unsuitable for parole.  In essence, petitioner is claiming that the Board

18 violated his right to due process and that its unfavorable parole decision violates the Ex Post

19 Facto Clause and constitutes an unlawful Bill of Attainder.  (P. & A. at 1-10.)  Petitioner also

20 claims that his right to due process was violated because the Board operated under an illegal

21 policy requiring that all those convicted of murderer be found unsuitable for parole.  (Id. at 9.)

22 As described above, the California Court of Appeal rejected these claims on the merits.  For the

23 reasons explained below, the decision of the state appellate court is not contrary to or an

24 unreasonable application of federal law and should not be set aside.

25     A.  Background

26         The Board commenced its June 12, 2002 decision by stating that the panel had

4

reviewed "all information received from the public" and had concluded that "the prisoner is not

yet suitable for parole and would pose an unreasonable risk of danger to society or a threat to

public safety if released from prison."  (Pet., Ex. I entitled "2002 Parole Hearing Transcript.")

The phrases "unreasonable risk of danger to society" and "a threat to public safety" are derived

from § 3041(b) of the California Penal Code and § 2281(a) of Title 15 of the California Code of

Regulations.  Pursuant to the Penal Code provision,

> [t]he panel or board shall set a release date unless it determines that
> the gravity of the current convicted offense or offenses, or the
> timing and gravity of current or past convicted offense or offenses,
> is such that consideration of the public safety requires a more
> lengthy period of incarceration for this individual, and that a parole
> date, therefore, cannot be fixed at this meeting.

Cal. Penal Code § 3041(b).

The state regulation that governs parole suitability findings for life prisoners states

as follows with regard to the statutory requirement of California Penal Code § 3041(b):

"Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied

parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to

society if released from prison."  Cal. Code Regs. tit. 15, § 2281(a).  The same regulation

requires the Board to consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present
> mental state; past criminal history, including involvement in other
> criminal misconduct which is reliably documented; the base and
> other commitment offenses, including behavior before, during and
> after the crime; past and present attitude toward the crime; any
> conditions of treatment or control, including the use of special
> conditions under which the prisoner may safely be released to the
> community; and any other information which bears on the
> prisoner's suitability for release.

Cal. Code Regs. tit. 15, § 2281(b).

The regulation identifies circumstances that tend to show suitability or

unsuitability for release.  Id., § 2281(c) & (d).  The following circumstances tend to show that a

prisoner is suitable for release: the prisoner has no juvenile record of assaulting others or

committing crimes with a potential of personal harm to victims; the prisoner has experienced

reasonably stable relationships with others; the prisoner has performed acts that tend to indicate

the presence of remorse or has given indications that he understands the nature and magnitude of

his offense; the prisoner committed his crime as the result of significant stress in his life; the

prisoner's criminal behavior resulted from having been victimized by battered women syndrome;

the prisoner lacks a significant history of violent crime; the prisoner's present age reduces the

probability of recidivism; the prisoner has made realistic plans for release or has developed

marketable skills that can be put to use upon release; institutional activities indicate an enhanced

ability to function within the law upon release.  Id., § 2281(d).

          The following circumstances tend to indicate unsuitability for release: the prisoner

committed the offense in an especially heinous, atrocious, or cruel manner; the prisoner had a

previous record of violence; the prisoner has an unstable social history; the prisoner's crime was

a sadistic sexual offense; the prisoner had a lengthy history of severe mental problems related to

the offense; the prisoner has engaged in serious misconduct in prison.  Id., § 2281(c).  Factors to

consider in deciding whether the prisoner's offense was committed in an especially heinous,

atrocious, or cruel manner include: multiple victims were attacked, injured, or killed in the same

or separate incidents; the offense was carried out in a dispassionate and calculated manner, such

as an execution-style murder; the victim was abused, defiled or mutilated during or after the

offense; the offense was carried out in a manner that demonstrated an exceptionally callous

disregard for human suffering; the motive for the crime is inexplicable or very trivial in relation

to the offense.  Cal. Code Regs., tit. 15, § 2281(c)(1)(A) - (E).

          In the end, under current California law as recently clarified by the State Supreme

Court,

> the determination whether an inmate poses a current danger is not
> dependent upon whether his or her commitment offense is more or
> less egregious than other, similar crimes.  (Dannenberg, supra, 34
> Cal. 4th at pp 1083-84 [parallel citations omitted].)  Nor is it
> dependent solely upon whether the circumstances of the offense

exhibit viciousness above the minimum elements required for conviction of that offense.  Rather, the relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense.  This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude. [citations omitted].

In re Lawrence, 44 Cal. 4th 1181, 1221 (2008).

In addressing the factors it considered in reaching its 2002 decision that petitioner was unsuitable for parole, the Board in this case stated as follows:

PRESIDING COMMISSIONER WELCH:

Okay, the panel reviewed all information received from the public and relied on the following circumstances in concluding that the prisoner is not yet suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison.  The offense was carried out in an especially cruel and callous manner.  The offense was carried out in a dispassionate manner.  The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering and the motive for the crime was inexplicable or very trivial in relationship to the offense that was committed.  The conclusion was drawn from the Statement of Facts wherein on December the 23rd, 1988 the prisoner was at his neighbor's home where he was drinking and they was [sic] badgering each other in a joking manner.  The victim's girlfriend was conversing with the prisoner in the living room and she noticed the prisoner pull a gun out and showed it to her.  She immediately informed the victim he had a gun.  There's indication that the victim walked in the kitchen and through the living room with a knife and returned back to the kitchen and the prisoner stared into the kitchen, then raised his gun and pointed the weapon towards the kitchen area.  The prisoner then fired the weapon three times, each shot making contact with the victim and of course the victim succumbed [to] the wounds, died from the wounds and the prisoner was convicted of murder second [sic].  The prisoner had no previous arrest history or criminal history as a juvenile or as an adult.  There is no indication in the prisoner's record that he had an unstable social history with the exception of the prisoner's own admission that he used an array of different types of drugs and of course on the night of the offense the prisoner was highly intoxicated.  There is some indication that he was intoxicated.  The prisoner's psychiatric report by Dr. Macomber is basically a supportive report and that report is dated

4/04, '02 and it refers to a previous report that's dated 2/12, '99. And since the prisoner did not receive a parole date we are going to request a new psychiatric report be completed. The prisoner does have some parole plans. The hearing Panel notes that in response to Penal Code 3042 notices indicate an opposition to a finding of suitability. The Deputy District Attorney spoke in opposition of a finding of suitability at this time and also there is a letter in the file from the Sacramento County Police Department speaking in opposition of a finding of suitability. The Panel makes the following findings: The prisoner still needs to develop the ability to face, discuss, understand and cope with stress in a non-destructive manner and until progress is made the prisoner continues to be unpredictable and a threat to others and that also includes coming to terms with and understanding the circumstances which led to the offense that he was committed for. Nevertheless the prisoner should be commended for some of his achievements. The prisoner has only received one disciplinary write up since he's been in prison and we certainly want to recognize that. He's received two vocations and we certainly want to recognize that also and the vocations was [sic] in janitorial and landscaping. And the prisoner appears to have family support on the outside. However those positive aspects of his behavior does [sic] not outweigh the factors of unsuitability at this time. Parole is denied for two years. In a separate decision the hearing Panel finds that it's not reasonable to expect that parole would be granted at a hearing during the following two years. The specific reasons, one, the prisoner committed the offense in an especially cruel and callous manner. He was at a neighbor's home drinking with a weapon and he and the victim was [sic] badgering each other in a joking manner going back and forth and somewhere during the course of the evening after drinks and joking and badgering each other the prisoner pulled a weapon and fired it three times and struck the victim and the victim succumbed to his wounds. The offense was carried out in a dispassionate manner. The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering and the motive for the crime was inexplicable or at the very least very trivial in relationship to the offense that was committed. The prisoner has not completed necessary programming which is essential to his adjustment and needs additional time to gain such programming. Therefore a longer period of observation and evaluation of the prisoner is required before the Board shall find that the prisoner is suitable for parole. The Panel recommends that the prisoner remain disciplinary-free and continue to participate in self-help programs. Also the Panel is recommending that – Well, not recommending, the panel is requesting that a new psychiatric report be completed for the prisoner's next hearing in two years. The Panel recommends that the following areas be explored: The prisoner's violence potential in the free community, the significance of alcohol and drugs as they relate to the commitment offense, the estimation of the prisoner's ability to remain [sic] from the abuse

1     of same when released, also explore the extent to which the
      prisoner has explored the commitment offense and coming [sic] to
2     terms with the underlying causes.  And that concludes the decision.

3   (Pet., Ex. I at 37-41.)

4          B.   Due Process

5          Petitioner first claims that the failure of the Board to find him suitable for parole

6   deprived him of his liberty without due process of law.[1]

7          The Due Process Clause of the Fourteenth Amendment prohibits state action that

8   deprives a person of life, liberty, or property without due process of law.  One alleging a due

9   process violation must first demonstrate that he was deprived of a liberty or property interest

10  protected by the Due Process Clause and then show that the procedures attendant upon the

11  deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson,

12  490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).

13         A protected liberty interest may arise from either the Due Process Clause of the

14  United States Constitution or state laws.  Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).

15  The United States Constitution does not, of its own force, create a protected liberty interest in a

16  parole date, even one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).

17  However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that

18  parole release will be granted' when or unless certain designated findings are made, and thereby

19  gives rise to a constitutional liberty interest."  McQuillion, 306 F.3d at 901 (quoting Greenholtz

20  v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)).  California's parole scheme gives rise to a

21  cognizable liberty interest in release on parole, even for prisoners who have not already been

22  _____

23         [1]  Petitioner parses this claim into several separate arguments, as follows: (1) that the
    Board's decision was "achieved through arbitrary and capricious action, abuse of discretion and
24  in opposition to the enabling statute;" (2) the Board in 2002 improperly listed four reasons to
    deny him a parole date, whereas at his previous suitability hearing the Board listed only two
25  reasons; (3) the opposition to a finding of parole suitability by the District Attorney is irrelevant;
    and (4) the Board's recommendations to petitioner are too vague to be meaningful.  (Pet. at 2, 8,
26  9.)  Nonetheless, in essence, petitioner's claim is that his right to due process was violated by the
    Board's unfavorable suitability decision.

9

1  granted a parole date.  Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006);

2  Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion, 306 F.3d at 903; see also In re

3  Lawrence, 44  Cal.4th at 1204, 1210, 1221.  Accordingly, this court must examine whether the

4  deprivation of petitioner's liberty interest in this case lacked adequate procedural protections and

5  therefore violated due process.

6          Because "parole-related decisions are not part of the criminal prosecution, the full

7  panoply of rights due a defendant in such a proceeding is not constitutionally mandated."

8  Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and

9  citation omitted).  Where, as here, parole statutes give rise to a protected liberty interest, due

10  process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded

11  notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the

12  reasons for the denial.  Id. at 1390 (quoting Greenholtz, 442 U.S. at 16).  See also Morrissey v.

13  Brewer, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving

14  parole issues).  Violation of state mandated procedures will constitute a due process violation

15  only if the violation causes a fundamentally unfair result.  Estelle, 502 U.S. at 65.

16          In California, the setting of a parole date for a state prisoner is conditioned on a

17  finding of suitability.  Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  The

18  requirements of due process in the parole suitability setting are satisfied "if some evidence

19  supports the decision."  McQuillion, 306 F.3d at 904 (citing Superintendent v. Hill, 472 U.S.

20  445, 456 (1985)).  See also Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Perveler v.

21  Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992)).  For purposes of AEDPA, Hill's "some evidence"

22  standard is "clearly established" federal law.  Sass, 461 F.3d at 1129 (citing Hill, 472 U.S. at

23  456).  "The 'some evidence' standard is minimally stringent," and a decision will be upheld if

24  there is any evidence in the record that could support the conclusion reached by the factfinder.

25  Powell, 33 F.3d at 40 (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)); Toussaint v.

26  McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).  However, "the evidence underlying the board's

1   decision must have some indicia of reliability." <u>Jancsek</u>, 833 F.2d at 1390. <u>See also</u> <u>Perveler</u>,

2   974 F.2d at 1134. Determining whether the "some evidence" standard is satisfied does not

3   require examination of the entire record, independent assessment of the credibility of witnesses,

4   or the weighing of evidence. <u>Toussaint</u>, 801 F.2d at 1105. The question is whether there is any

5   reliable evidence in the record that could support the conclusion reached. <u>Id.</u>

6          When a federal court assesses whether a state parole board's suitability

7   determination was supported by "some evidence" in a habeas case, the analysis "is framed by the

8   statutes and regulations governing parole suitability determinations in the relevant state." <u>Irons</u>

9   <u>v. Carey</u>, 505 F.3d 846, 851 (9th Cir. 2007) This court must:

10          look to California law to determine the findings that are necessary
            to deem a prisoner unsuitable for parole, and then must review the
11          record in order to determine whether the state court decision
            holding that these findings were supported by "some evidence" in
12          [petitioner's] case constituted an unreasonable application of the
            "some evidence" principle articulated in <u>Hill</u>.
13

14   <u>Id.</u> In California, the overriding concern in determining parole suitability is public safety. <u>In re</u>

15   <u>Dannenberg</u>, 34 Cal.4th 1061, 1086 (2005). This "core determination of 'public safety' . . .

16   involves an assessment of an inmates <u>current</u> dangerousness." <u>In re Lawrence</u>, 44 Cal.4th at

17   1205 (emphasis in original). Accordingly,

18          when a court reviews a decision of the Board or the Governor, the
            relevant inquiry is whether some evidence supports the decision of
19          the Board or the Governor that the inmate constitutes a current
            threat to public safety, and not merely whether some evidence
20          confirms the existence of certain factual findings.

21   <u>In re Lawrence</u>, 44 Cal.4th at 1212 (citing <u>In re Rosenkrantz</u>, 29 Cal 4th 616, 658 (2002); <u>In re</u>

22   <u>Dannenberg</u>, 34 Cal.4th at 1071; and <u>In re Lee</u>, 143 Cal. App. 4th 1400, 1408 (2006)).[2]

23

24          [2] Under California law, the Board is not to engage in a comparative analysis of the period
     of confinement being served by other inmates for similar crimes. <u>In re Lawrence</u>, 44 Cal. 4th
25   1181, 1217, 1221 (2008); <u>In re Dannenberg</u>, 34 Cal.4th 1061, 1070-71 (2005). Rather, the
     suitability determination is to be individualized and is to focus upon the public safety risk
26   currently posed by the particular offender. (<u>Id.</u>)

1     In recent years the Ninth Circuit Court of Appeals has been called upon to address

2  the issues raised by petitions such as that now pending before this court in three significant cases,

3  each of which will be discussed below.  First, in Biggs, the Ninth Circuit Court of Appeals

4  recognized that a continued reliance on an unchanging factor such as the circumstances of the

5  offense could at some point result in a due process violation.[3]  While the court in Biggs rejected

6  several of the reasons given by the Board for finding the petitioner in that case unsuitable for

7  parole, it upheld three:  (1) petitioner's commitment offense involved the murder of a witness;

8  (2) the murder was carried out in a manner exhibiting a callous disregard for the life and

9  suffering of another; and (3) petitioner could benefit from therapy.  Biggs, 334 F.3d at 913.

10 However, the court in Biggs cautioned that continued reliance solely upon the gravity of the

11 offense of conviction and petitioner's conduct prior to committing that offense in denying parole

12 could, at some point, violate due process.  In this regard, the court observed:

13         As in the present instance, the parole board's sole supportable
           reliance on the gravity of the offense and conduct prior to
14         imprisonment to justify denial of parole can be initially justified as
           fulfilling the requirements set forth by state law.  Over time,
15         however, should Biggs continue to demonstrate exemplary
           behavior and evidence of rehabilitation, denying him a parole date
16         simply because of the nature of Biggs' offense and prior conduct
           would raise serious questions involving his liberty interest in
17         parole.

18 Id. at 916.  The court in Biggs also stated that "[a] continued reliance in the future on an

19 unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs

20 contrary to the rehabilitative goals espoused by the prison system and could result in a due

21 process violation."  Id. at 917.

22         In Sass, the Board found the petitioner unsuitable for parole at his third suitability

23 hearing based on the gravity of his offenses of conviction in combination with his prior offenses.

24

25 _____

26    [3] That holding has been acknowledged as representing the law of the circuit.  Irons v.
   Carey, 505 F.3d 846, 853 (9th Cir. 2007); Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1129
   (9th Cir. 2006).

12

461 F.3d at 1126.  Citing <u>Biggs</u>, the petitioner in <u>Sass</u> contended that reliance on these unchanging factors violated due process.  The court disagreed, concluding that these factors amounted to "some evidence" to support the Board's determination.  <u>Id.</u> at 1129.  The court provided the following explanation for its holding:

> While upholding an unsuitability determination based on these same factors, we previously acknowledged that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and *could* result in a due process violation."  <u>Biggs</u>, 334 F.3d at 917 (emphasis added).  Under AEDPA it is not our function to speculate about how future parole hearings could proceed.  <u>Cf. id.</u>  The evidence of Sass' prior offenses and the gravity of his convicted offenses constitute some evidence to support the Board's decision.  Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d).

<u>Id.</u>

> In <u>Irons</u> the Ninth Circuit sought to harmonize the holdings in <u>Biggs</u> and <u>Sass</u>, stating as follows:

> Because the murder Sass committed was less callous and cruel than the one committed by Irons, and because Sass was likewise denied parole in spite of exemplary conduct in prison and evidence of rehabilitation, our decision in <u>Sass</u> precludes us from accepting Iron's due process argument or otherwise affirming the district court's grant of relief.

> We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. Specifically, in <u>Biggs</u>, <u>Sass</u>, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. <u>Biggs</u>, 334 F.3d at 912; <u>Sass</u>, 461 F.3d at 1125.  All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.

/////

> Furthermore, we note that in <u>Sass</u> and in the case before us there was substantial evidence in the record demonstrating rehabilitation. In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole. We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes. <u>Biggs</u>, 334 F.3d at 917.

<u>Irons</u>, 505 F.3d at 853-54.[4]

After taking into consideration the Ninth Circuit decisions in <u>Biggs</u>, <u>Sass</u>, and <u>Irons</u>[5], and for the reasons set forth below, this court concludes that petitioner is not entitled to federal habeas relief with respect to his due process challenge to the Board's June 12, 2002, decision denying him parole.

First, and perhaps most importantly, at the time of the challenged parole suitability hearing, petitioner had not yet served the minimum number of years required by his sentence.  Pursuant to the holding in <u>Irons</u>, petitioner's right to due process was not violated when he was deemed unsuitable for parole prior to the expiration of his minimum term.  <u>Irons</u>, 505 F.3d at 665.  Further, the Board's decision that petitioner was unsuitable for parole and that his release would unreasonably endanger public safety was supported by "some evidence" that bore "indicia of reliability." <u>Jancsek</u>, 833 F.2d at 1390.  A review of the record reflects that the Board relied in large part on the circumstances of petitioner's offense of conviction as well as the

---

[4]  The California Supreme Court has also acknowledged that the aggravated nature of the commitment offense, over time, may fail to provide some evidence that the inmate remains a current threat to public safety.  <u>In re Lawrence</u>, 44  Cal.4th at 1218-20 & n. 20.

[5]  Even more recently a panel of the Ninth Circuit in <u>Hayward v. Marshall</u>, 512 F.3d 536, 546-47 (9th Cir. 2008), determined that under the "unusual circumstances" of that case the unchanging factor of the gravity of the petitioner's commitment offense did not constitute "some evidence" supporting the governor's decision to reverse a parole grant on the basis that the petitioner would pose a continuing danger to society.  However, on May 16, 2008, the Court of Appeals decided to rehear that case en banc.  <u>Hayward v. Marshall</u>, 527 F.3d 797 (9th Cir. 2008). Therefore, the panel decision in <u>Hayward</u> is no longer citable precedent.

1   need for him to complete the necessary programming and be observed and evaluated in denying

2   him a parole date.[6]  According to the cases cited above, these factors constitutes "some evidence"

3   supporting the Board's decision where petitioner has not served the minimum term required by

4   his sentence.  Sass, 469 F.3d at 1129; Irons, 505 F.3d at 665.

5           The Board's 2002 decision that petitioner was unsuitable for parole and would

6   pose a danger to society if released meets the minimally stringent test set forth in Biggs, Sass,

7   and Irons.  This case has not yet reached the point where a continued reliance on an unchanging

8   factor such as the circumstances of the offense in denying parole has resulted in a due process

9   violation.  Accordingly, petitioner is not entitled to relief on his claim that the Board's failure to

10  find him suitable for parole at the June 12, 2002 parole suitability hearing violated his right to

11  due process.  Sass, 461 F.3d at 1129; Irons, 505 F.3d at 664-65.[7]

12  /////

13

---

14      [6] As noted above, the Board also relied on the fact that both the Sacramento County
    District Attorney and the Sacramento Police Department opposed a finding of suitability.
15  However, under Hill, the district attorney's opinion, without more, cannot be considered "some
    evidence" supporting the Board's decision.  Rosenkrantz v. Marshall, 444 F. Supp.2d 1063, 1080
16  n.14 (C.D. Cal. 2006).

17      [7] Petitioner presents several state law claims throughout his petition.  For instance,
    petitioner alleges that the Board must consider other offenses of similar gravity and magnitude in
18  setting a parole term and must ensure that prison terms be "uniform."  (P. & A. at 3.)  Petitioner
    also claims that California Penal Code § 3041 requires the Board to grant him a parole date
19  because of its direction that one year prior to an inmate's minimum eligible parole date, a Board
    panel shall meet with the inmate and "shall normally" set a parole release date; whereas, to the
20  contrary, the Board normally fails to set a parole release date.  (Id. at 2-3.)  In addition, petitioner
    argues that the Board's failure to find him suitable for parole violated various provisions of state
21  law.  Many of petitioner's arguments based on state law have been rejected by the California
    Supreme Court which has held, for example, that the Board is not required to refer to its
22  sentencing matrices or to compare other crimes of the same type in deciding whether a prisoner is
    suitable for parole.  In re Dannenberg, 34 Cal. 4th at 1084, 1098; see also In re Lawrence, 44 Cal.
23  4th at 1217, 1221.  More importantly for purposes of this federal habeas corpus action, petitioner
    has cited no federal authority for the proposition that the Due Process Clause requires a state
24  parole board to either set a parole date where the board members believe a prisoner poses an
    unreasonable risk of danger to society or engage in a comparative analysis before denying parole
25  suitability.  In short, petitioner's arguments that the state court has erred in applying state law in
    determining his release date are not cognizable in this federal habeas corpus proceeding.  Estelle,
26  502 U.S. at 67-68.

1              B. Unconstitutionally Vague

2          Petitioner also argues that the regulations the Board uses to make its suitability

3   decision contain intolerable and vague criteria and directly violate his right to due process.  (P. &

4   A. at 4-5.)  He specifically object to the phrase "especially heinous, atrocious or cruel," found in

5   Cal. Code Regs. tit. 15, § 2281(c).  (Id)

6          A statute or regulation is void for vagueness "if it fails to give adequate notice to

7   people of ordinary intelligence concerning the conduct it proscribes or if it invites arbitrary and

8   discriminatory enforcement."  United States v. Doremus, 888 F.2d 630, 634 (9th Cir. 1989).  See

9   also Humanitarian Law Project v. Mukasey, 509 F.3d 1122, 1134 (9th Cir. 2007) ("To survive a

10  vagueness challenge, the statute must be sufficiently clear to put a person of ordinary intelligence

11  on notice that his or her contemplated conduct is unlawful.")  "[A] party challenging the facial

12  validity of [a law] on vagueness grounds outside the domain of the First Amendment must

13  demonstrate that the enactment is impermissibly vague in all of its applications."  Hotel & Motel

14  Ass'n of Oakland v. City of Oakland, 344 F.3d 959, 972 (9th Cir. 2003) (internal quotation marks

15  omitted).   Therefore, "if the statute is constitutional as applied to the individual asserting the

16  challenge, the statute is facially valid."  United States v. Dang, 488 F.3d 1135, 1141 (9th Cir.

17  2007).  Moreover, "[t]he Due Process Clause does not require the same precision in the drafting

18  of parole release statutes as is required in the drafting of penal laws."  Hess v. Board of Parole

19  and Post-Prison Supervision, 514 F.3d 909, 914 (9th Cir. 2008) (citing Glauner v. Miller, 184

20  F.3d 1053, 1055 (9th Cir. 1999)).

21         The California parole release statute provides a list of five factors to be considered

22  in determining whether a crime is especially "heinous, atrocious or cruel," including whether the

23  offense was carried out in a dispassionate and calculated manner and whether the motive for the

24  crime is inexplicable or very trivial in relation to the offense.  Cal. Code Regs., tit. 15, §

25  2281(c)(1)(A) - (E).  Because the term "especially heinous, atrocious, or cruel" is further limited

26  by these five detailed factors, it is not constitutionally vague.  Cf. Arave v. Creech, 507 U.S. 463,

1    470-78 (1993) (Idaho death penalty statute which cited as an aggravating factor that the crimes

2    were carried out in "utter disregard for human life" was not impermissibly vague because

3    limiting construction had been adopted defining this factor as demonstrating "the utmost

4    disregard for human life, i.e., the cold-blooded pitiless slayer").  Further, petitioner is unable to

5    demonstrate that the statute was impermissibly vague as applied to him because his crime fits

6    squarely within two of the listed factors to be considered in determining whether the offense was

7    committed in an especially heinous, atrocious or cruel manner: the crime was carried out in a

8    dispassionate and calculated manner and the motive for the crime was trivial or inexplicable.  15

9    Cal. Code Regs. § 2281(c)(a)(A) - (E).

10                Instructive in this regard is the case of Butler v. Calderon, No. C 97-2184 EDL

11   (PR), 1998 WL 387612 (N.D. Cal. July 6, 1998), where the court found that a prisoner's

12   vagueness challenge to the standards relied upon by the Board at a parole hearing must fail where

13   the prisoner had received the process due under the decision in Greenholtz v. Inmates of

14   Nebraska Penal, 442 U.S. 1, 7 (1979).  Id. at *5.  As set forth above, the parole suitability hearing

15   petitioner attacks here satisfied the requirements of due process; therefore, petitioner's vagueness

16   claim is without merit.  See Butler, 1998 WL 387612 at *5; see also Glauner,184 F.3d at 1055

17   (statute requiring that an inmate be certified "not a menace to the health, safety or morals of

18   others" before being eligible for parole was not unconstitutionally vague); Pedro v. Oregon

19   Parole Bd., 825 F.2d 1396, 1399 (9th Cir. 1987) (rejecting claim that due process required

20   articulation of a standard definition of the term "significant planning and preparation" in the

21   parole context).[8]

22   ────────────────

23         [8] Claims similar to that presented by petitioner in this regard have consistently been
     rejected by district courts in California.  See Ortiz v. Ayers, No. C 06-5368 RMW (PR), 2008
24   WL 2051051, *5 (N.D. Cal. May 13, 2008); Stiner v. Ayers, No. C 05-5400 JF (PR), 2008 WL
     906161, *5 (N.D. Cal. Mar. 31, 2008); Neblett v. Ornoski, No. C 05-4228 SI (pr), 2008 WL
25   698477, *9 (N.D. Cal. Mar. 14, 2008); Winston v. California Bd. of Prison Terms, No. S-00-
     0156 FCD GGH P, 2006 WL 845584, *2 (E.D. Cal. Mar. 31, 2006); Sariaslan v. Butler, No. C
26   04-01073 CRB, 2004 WL 2203472, *5 (N.D. Cal. Sept. 28, 2004); Masoner v. California, No.
     CV 03-1261-ER, 2004 WL 1080177, *1 (C.D. Cal. Jan. 23, 2004).

1        Finally, California Code of Regulation Title 15, § 2402(c)(1) has not been found

2    to be unduly vague or overbroad under federal law.  Nor has federal law been found to preclude

3    the use of terms such as "especially cruel" or "callous" as guidelines in parole suitability

4    evaluations.  Cf. Maynard v. Cartwright, 486 U.S. 356, 363-64 (1988) (in a capital case, the

5    "especially heinous, atrocious, or cruel" aggravating circumstance was unconstitutionally vague

6    because it did not offer sufficient guidance to the jury in deciding whether to impose the death

7    penalty); Tuilaepa v. California, 512 U.S. 967, 972 (1994) (statutory aggravating circumstances

8    in capital cases "may not be unconstitutionally vague").

9        For all of these reasons, petitioner's challenge to California's parole statute on

10    vagueness grounds must fail.  The opinion of the California Court of Appeal rejecting

11    petitioner's challenge to the statute on vagueness grounds is not contrary to or an unreasonable

12    application of clearly established federal law.  See 28 U.S.C. § 2254(d)(1).  Accordingly,

13    petitioner is not entitled to relief on this claim.

14        C. Ex Post Facto

15        Petitioner claims that the Board violated the federal constitutional prohibition on

16    ex post facto laws when it denied him parole in 2002.  He argues the Board's finding that he

17    poses an "unreasonable risk" to public safety is a subterfuge to "extend the sentences of all

18    persons having indeterminate sentences."  (P. & A. at 6.)  He also contends that the parole statute

19    allowing the Board to schedule subsequent parole hearings two and five years later is improperly

20    "intended to extend terms of incarceration."  (Id.) (citing Cal. Pen. Code § 3041.5(b) and (c)).  In

21    essence, petitioner is claiming that the two-year parole denial rendered by the Board in 2002

22    violated the Ex Post Facto Clause in that he was entitled to annual parole suitability hearings

23    based on the law in effect at the time of his commitment offense in 1990.

24        The Constitution provides that "No State shall . . . pass any . . . ex post facto

25    Law." U.S. Const. art. I, § 10.  See also Himes, 336 F.3d at 854.  A law violates the Ex Post

26    Facto Clause of the United States Constitution if it: (1) punishes as criminal an act that was not

18

1   criminal when it was committed; (2) makes a crime's punishment greater than when the crime

2   was committed; or (3) deprives a person of a defense available at the time the crime was

3   committed.  See Collins v. Youngblood, 497 U.S. 37, 52 (1990).  The Ex Post Facto Clause "is

4   aimed at laws that retroactively alter the definition of crimes or increase the punishment for

5   criminal acts."  Himes, 336 F.3d at 854 (quoting Souch v. Schaivo, 289 F.3d 616, 620 (9th Cir.

6   2002)).  See also Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 504 (1995).  The Ex Post Facto

7   Clause is also violated if: (1) state regulations have been applied retroactively to a defendant; and

8   (2) the new regulations have created a "sufficient risk" of increasing the punishment attached to

9   the defendant's crimes.  Himes, 336 F.3d at 854.  Not every law that disadvantages a defendant is

10   a prohibited ex post facto law.  In order to violate the clause, the law must essentially alter "the

11   definition of criminal conduct" or increase the "punishment for the crime."  Lynce v. Mathis, 519

12   U.S. 433, 441-42 (1997).

13           California Penal Code § 3041.5, as amended in 1994, provides that the Board may

14   schedule a parole suitability hearing no later than up to five years after any hearing where a

15   convicted murderer is denied parole and the Board finds that it is not reasonable to expect that

16   parole would be granted at a hearing during the interceding years.  Because the 1994 amendment

17   simply altered the method of setting a parole release date, and because it does not create a

18   meaningful "risk of increasing the measure of punishment attached to the covered crimes," its

19   application to petitioner does not constitute an Ex Post Facto Clause violation.  Morales, 514

20   U.S. at 509.  See also Watson v. Estelle, 886 F.2d 1093, 1097-98 (9th Cir. 1989) (it is not a

21   violation of the Ex Post Facto Clause to apply § 3041.5(b)(2)(A) to prisoners sentenced to life

22   imprisonment prior to the implementation of California's Determinate Sentence Law in 1977);

23   Clifton v. Attorney General Of the state of California, 997 F.2d 660, 662 n.1 (9th Cir. 1993).

24   Accordingly, petitioner is not entitled to relief on this claim.

25   /////

26   /////

1      D.  Bill of Attainder

2           Next, petitioner contends that the Board's decision finding him unsuitable for

3   parole violates the prohibition against a bill of attainder.  A bill of attainder involves a statute

4   imposing punishment without the benefit of trial.  Nixon v. Administrator of Gen. Servs., 433

5   U.S. 425, 468 (1977).  Three requirements must be met to establish a violation of the Bill of

6   Attainder Clause: it must single out an identifiable group, inflict punishment, and dispense with a

7   judicial trial.  Id.; Selective Serv. Sys. v. Minnesota Pub. Interest Research Group, 468 U.S. 841,

8   846-47 (1984).  Three inquiries determine whether a statute "inflicts punishment:" (1) whether

9   the challenged statute falls within the historical meaning of legislative punishment; (2) whether

10  the statute, "viewed in terms of the type and severity of burdens imposed, reasonably can be said

11  to further nonpunitive legislative purposes;" and (3) whether the legislative record "evinces a

12  congressional intent to punish."  United States v. Lujan, 504 F.3d 1003, 1006 (9th Cir. 2007)

13  (quoting Selective Serv. Sys., 468 U.S. at 852).

14          The failure of the Board to find petitioner suitable for parole does not qualify as a

15  bill of attainder.  Petitioner has not alleged any facts which could establish he is subject to a bill

16  of attainder, nor has he cited any United States Supreme Court case to support his claim.  The

17  state court's decision rejecting petitioner's challenge on this grounds was therefore neither

18  contrary to, or an unreasonable application of, clearly-established federal law.  See Stevenson v.

19  Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004) (citing Brewer v. Hall, 378 F.3d 952, 955 (9th Cir.

20  2004)).  Accordingly, for the foregoing reasons, petitioner is not entitled to relief on this claim.

21      E.  No Parole Policy

22          Finally, petitioner claims that the Board's refusal to grant him parole was based

23  on an illegal gubernatorial policy against parole for inmates convicted of murder and not on the

24  individual circumstances of his case.  (P. & A. at 9.)  Petitioner has failed to substantiate this

25  allegation with credible proof of the existence of such an illegal policy.  Petitioner has not

26  provided any evidence that a "no parole" policy on the part of a former governor played a part in

1   the Board's decision finding him unsuitable for parole.  As discussed above, independent of any

2   alleged policy, there was "some evidence" in the record to support the Board's decision in this

3   case.  See In re Rosenkrantz, 29 Cal. 4th 616, 684-86 (2002) (California Supreme Court rejecting

4   petitioner's claim that the former Governor's reversal of the Board's grant of parole resulted from

5   a blanket policy of denying parole in all murder cases because there was "some evidence" to

6   support the Governor's decision).  For these reasons, petitioner is not entitled to relief on this

7   claim.[9]

8                                                      CONCLUSION

9              Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

10  a writ of habeas corpus be denied.

11             These findings and recommendations are submitted to the United States District

12  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

13  days after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

16  shall be served and filed within ten days after service of the objections.  The parties are advised

17  /////

18  /////

19

20  _____

         [9]  In his traverse, petitioner claims that his right to equal protection was violated when the

21  Board failed to find him suitable for parole.  (Traverse at 15-18.)  "A Traverse is not the proper
     pleading to raise additional grounds for relief."  Cacoperdo v. Demosthenes, 37 F.3d 504, 507

22  (9th Cir.1994).  Even assuming arguendo that an equal protection claim has been properly raised,
     the claim should be rejected.  A petitioner raising an equal protection claim in the parole context

23  must demonstrate that he was treated differently from other similarly situated prisoners and that
     the Board lacked a rational basis for its decision.  McGinnis v. Royster, 410 U.S. 263, 269-70

24  (1973); McQueary v. Blodgett, 924 F.2d 829, 835 (9th Cir. 1991).  Petitioner has failed to show
     that any other inmate who was similarly situated to him was granted a parole date.  Petitioner has

25  also failed to demonstrate that the Board violated his equal protection rights by applying a
     different suitability standard in his case.  Accordingly, petitioner is not entitled to relief on a

26  claim that his equal protection rights were violated by the Board's conclusion that he was not
     suitable for parole.

1   that failure to file objections within the specified time may waive the right to appeal the District

2   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3   DATED: September 30, 2008.

4

5   _____

6   DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

7   DAD:8
    lawson1869.hc

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26